[Cite as *State v. Barnes*, 2023-Ohio-3706.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2022CA00154 |
| JAMIE LEE BARNES | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Canton Municipal Court, Case No. 2022 CRB 03833

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 11, 2023

APPEARANCES:

For Plaintiff-Appellee

JASON P. REESE
Canton City Law Director

KATIE M. ERCHICK GILBERT
Canton City Prosecutor

KATE M. LUKOSAVICH
Assistant Prosecutor
218 Cleveland Avenue, S.W.
Canton, Ohio 44702

For Defendant-Appellant

D. COLEMAN BOND
116 Cleveland Avenue, N.W. – Ste. #600
Canton, Ohio 44702

*Hoffman, J.*

**{¶1}** Defendant-appellant Jamie Lee Barnes appeals the judgment entered by the Canton Municipal Court convicting him of assault (R.C. 2903.13) following jury trial, and sentencing him to 120 days in jail. Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** On August 6, 2022, the victim and Appellant attended First Friday in downtown Canton together. The couple had dated for several years. They spent time downtown until the bars started to close. Appellant wanted to go to an after-hours club. The victim accompanied Appellant to the after-hours club, but felt uncomfortable and wanted to leave. They argued because Appellant wanted to stay at the club, but eventually left together in the victim's car.

**{¶3}** The victim began driving Appellant to his house. She was unfamiliar with the roads in Canton, and Appellant told her she was going the wrong way. Appellant "clipped" the victim in the jaw. Tr. 88. At first she thought he was being playful, but Appellant's conduct felt aggressive to the victim. The victim decided to take Appellant home, and then leave.

**{¶4}** Appellant directed the victim to a church parking lot. When she pulled into the parking lot, Appellant hit her with his fist on the side of her face. When she got out her cell phone to call 911, Appellant took her phone. The victim tried to get out of the car, but Appellant grabbed her hair and pulled her back into the car. Appellant repeatedly struck the victim in the head. The victim eventually got out of the car, and she was spitting up blood. She ran to the McDonald's restaurant in downtown Canton.

**{¶5}** The manager of McDonald's, who had previously worked with the victim, saw the victim in the parking lot. The victim was upset, frantic, and shaking. Her eyes

were bruised and swollen shut, and she had blood on her shirt.  The manager called 911, and the victim was taken to the hospital.

{¶6}   A Canton police officer interviewed the victim at the hospital.  The officer had to write out the statement for the victim because the victim's eyes were too swollen to see to write.  Later, Detective Robert Huber of the Canton Police Department interviewed the victim at her home.  He noted 75-85% of her face displayed some type of injury.

{¶7}   The next day, Appellant went to the police department voluntarily to give a statement.  Appellant told police the victim's injuries resulted from self defense.  He told police while in the parking lot, the victim blocked him from exiting the car and attacked him.  He told police he only struck her with his open hand, and not his fists.  Appellant had a small black line under his eye, and a bite mark on his cheek which he claimed came from the victim's attack on him.   When told by police he was being arrested for assault, Appellant slammed his head several times against a hook used to handcuff prisoners to the wall.  Appellant said he did not want to go back to jail and threatened to kill himself.

{¶8}   Appellant was indicted by the Stark County Grand Jury with assault as a first degree misdemeanor.  The case proceeded to jury trial in the Canton Municipal Court.

{¶9}   At trial, Appellant testified he had previously played college and professional football.  He admitted he was on probation for felonious assault.  He testified the victim opened his car door and tried to get him out of the car while it was in motion.  After stopping in the parking lot, he testified the victim elbowed him and bit him.  She then got on top of him and began attacking him.  He testified he hit her "fairly hard" with his open hands in an attempt to get her off of him.  Tr. 234.  He testified when she continued to

fight with him, he was "letting them rip." Tr. 236. Appellant testified when she sat back in her seat, he got out of the car and ran home.

{¶10} The jury found Appellant guilty of assault. The trial court convicted him upon the jury's verdict and sentenced him to 120 days in jail, ordered him to pay restitution, and issued a no contact order for two years, prohibiting Appellant from having contact with the victim. It is from the October 4, 2022 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT FOR THE OFFENSE OF ASSAULT AS THE STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO ESTABLISH THAT APPELLANT DID NOT ACT IN SELF-DEFENSE.

II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

I.

{¶11} In his first assignment of error, Appellant argues the State failed to prove beyond a reasonable doubt he did not act in self-defense.

{¶12} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶13}** To establish self-defense in the use of non-deadly force, the accused must show: (1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or an honest belief he was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Paskins,* 5th Dist. No. 2021 CA 00033, 2022-Ohio-4024, 200 N.E.3d 684, ¶ 48, *citing State v. Staats*, 5th Dist. Stark No. 2019CA00181, 2021-Ohio-1325, 2021 WL 1502535, ¶28.

**{¶14}** Pursuant to R.C. 2901.05, if there is evidence presented at trial which tends to support a claim the defendant used force against another in self-defense or in defense of another, the State must prove beyond a reasonable doubt the defendant did not use the force in self-defense or defense of another. R.C. 2901.05(B)(1). Once the initial showing is made, the burden of persuasion requires the State to disprove at least one of the elements of self-defense beyond a reasonable doubt. *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (3d Dist. Lake); *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

**{¶15}** The State need only disprove one of the elements of self-defense beyond a reasonable doubt. *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10. In reviewing a sufficiency of the evidence challenge involving self-defense, we must view the evidence in a light most favorable to the State, and determine whether any rational trier of fact could have found the State disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Davis*, 10th Dist. Franklin No. 19AP-

521, 2020-Ohio-4202, ¶ 27; *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶51.

{¶16} Viewing the evidence in a light most favorable to the State, we find the jury could reasonably have found Appellant was at fault for creating the situation which gave rise to the affray. The victim testified Appellant first "clipped" her after she made a wrong turn, and began hitting her with his fists after she parked in the church parking lot. Further, from the photographs of Appellant's injuries in contrast to the victim's more severe injuries, the jury could reasonably conclude even if Appellant did not start the fight, he used more force than necessary to defend against the smaller victim. By Appellant's own testimony, he hit her "fairly hard," and later was "letting them rip" against the victim. Tr. 234, 236. The State also presented the testimony of Detective Robert Huber, who stated in his experience, the type of injuries sustained by the victim in this case, in contrast to Appellant's more minor injuries, indicated the victim's injuries were not the result of Appellant acting in self-defense. The officer further testified Appellant could have exited the car during the fight.

{¶17} We find the State presented sufficient evidence to rebut Appellant's claim of self-defense. The first assignment of error is overruled.

II.

{¶18} In his second assignment of error, Appellant argues the judgment is against the manifest weight of the evidence. He argues the victim's testimony was contradictory and not credible, and his testimony he acted in self-defense was more credible than her testimony.

**{¶19}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶20}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). While the jury may take note of inconsistencies and resolve or discount them accordingly, such inconsistencies alone do not render a conviction against the manifest weight or sufficiency of the evidence. *State v. Wolters,* 5th Dist. No. 21CA000008, 2022-Ohio-538, 185 N.E.3d 601, ¶ 20.

**{¶21}** We find the jury did not lose its way in believing the testimony of the victim rather than the testimony of Appellant he acted in self-defense. The pictures of the injuries sustained by the victim demonstrate her face was covered in bruises and her eyes were swollen shut. In contrast, Appellant's injuries were minor. Det. Huber testified in his experience, the type of injuries sustained by the victim were not the result of someone acting in self-defense. Appellant admitted to hitting her "fairly hard," and to "letting them rip" while hitting the victim. Tr. 234, 236. In addition, the officer who interviewed the

victim at the hospital testified the victim displayed characteristics of violence from an intimate partner.

**{¶22}**  The second assignment of error is overruled.

**{¶23}**  The judgment of the Canton Municipal Court is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur